IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Orlando Rivera (B-45361), )
)
    Plaintiff, )
)
                                  ) Case No. 13 C 7266
v. )
)  Judge Charles R. Norgle
)
C/O Winters, et al., )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Orlando Rivera (hereinafter, "Plaintiff"), an Illinois prisoner formerly confined at the Stateville Correctional Center, brought this 42 U.S.C. § 1983 lawsuit alleging that Officer Winters subjected him to excessive force, and that Officer Winters, Sgt. McClelland, Officer Jackson, and Lt. Bishop violated his right to due process in the subsequent disciplinary proceedings. In a March 23, 2015, order, the Court dismissed certain of Plaintiff's claims, including all claims against Defendants Hardy and McBee. The remaining Defendants now move for summary judgment. For the reasons that follow, the motion is denied. The Court in its discretion recruits counsel to represent Plaintiff. Wallace Cyril Solberg, Anderson + Wanca, 3701 Algonquin Road, Suite 500, Rolling Meadows, IL 60008, wsolberg@andersonwanca.com, is recruited to represent Plaintiff in accordance with counsel's trial bar obligations under the District Court's Local Rules 83.11(g) and 83.37.

## BACKGROUND

I.    **Northern District of Illinois Local Rule 56.1**

Because Plaintiff is a *pro se* litigant, Defendants served him with a "Notice to Pro Se

Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. (Dkt. No. 72.) The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon to support the statement of additional facts. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008).

The purpose of Local Rule 56.1 statements and responses is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012). The local rule requires the parties to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See*

*Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (holding that *pro se* plaintiff's statement of material facts did not comply with Rule 56.1 as it "failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture."). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632; *see also Frey Corp. v. City of Peoria, Ill.*, 735 F.3d 505, 513 (7th Cir. 2013).

Consistent with the Local Rules, Defendants filed a Local Rule 56.1(a)(3) Statement of Material Facts with their summary judgment motion. (Dkt. No. 71.) Plaintiff did not submit responses to those factual assertions as required by Local Rule 56.1(b)(3)(A). However, he did submit a document that the Court interprets to be a Statement of Additional Facts as provided for in Local Rule 56.1(b)(3)(C). (Dkt. No. 84, pgs. 1-7.) Defendants have submitted a response to this statement. (Dkt. No. 86.) Defendants correctly contend that because Plaintiff did not properly respond to their Statement of Material Facts, it is deemed admitted. *See Sanchez v. Walker*, No. 09 C 2289, 2010 WL 5313815, at *2 (N.D. Ill. December 17, 2010) (noting that the Local Rules provide that a party opposing a motion for summary judgment first respond to the facts stated in the movant's 56.1 Statement, and then submit his own 56.1 Statement to provide any additional facts not addressed by his opponent). The Court thus considers Defendants' Statement of Material Facts to be admitted, to the extent those facts are supported by the record.

However, the Court will also consider Plaintiff's Statement of Additional Facts. Further, because Plaintiff is proceeding *pro se*, the Court will consider factual assertions he makes in his summary judgment materials to which he would be able to competently testify at a trial. *See* Fed. R. Evid. 602; *Hill v. Officer Phillips*, No. 12 C 9404, 2014 WL 626966 at *1 (N.D. Ill. Feb. 18, 2014). The Court observes that the parties generally agree on the relevant facts, as the only

3

description of the relevant events is supplied by Plaintiff's deposition. Regardless, any discrepancies will be noted below.

**II. Facts**

At all times relevant to this complaint, Plaintiff was an inmate at Stateville Correctional Center. (Defs.' Stmt. [71] at ¶ 2; Pl.'s Stmt. [84] at ¶ 2.) On May 2, 2012, Plaintiff was returning from the chow hall and was subjected to a random search by Officer Winters on the way back to his cell. (Defs'. Stmt. at ¶ 5-6, Pl.'s St. at ¶ 7.) Officer Winters found and seized a banana from Plaintiff's pocket. (*Id.*) This was in violation of prison rules, as inmates are not allowed to bring food from the chow house to their cells. (Defs.' Stmt. at ¶ 5.) After confiscating the banana, Officer Winters escorted Plaintiff and the other prisoners returning from the chow hall to their cell. (*Id.* at ¶ 7.) Plaintiff testified at his deposition that as Officer Winters attempted to lock up the prisoners, Winters became frustrated with a cell door that was difficult to close. (Pl.'s Dep. [75] at 16-1:5.) When Officers Winters stated that the prisoners should lock themselves up, one responded that locking them up was Winters' job. (*Id.* at 16:6-8.) According to Plaintiff, this prompted an angry reply from Officers Winters, who threatened to "whip any one of yous." (*Id.* at 16:8-12.) Officer Winters added that if any of the prisoners asked him for anything, his answer would be no. (*Id.* at 16:14-15.)

At this point, Officer Winters was looking in Plaintiff's direction. (*Id.* at 17:12-13.) Plaintiff responded that if he needed anything, he would ask another officer. (*Id.* at 17:13:14.) According to Plaintiff, and again, this is the only evidence in the record, Officer Winters responded by threatening to knock him out and "stomp a hole in [his] ass." (*Id.* at 17:21-23.) As Officer Winters approached his cell, Plaintiff told him, "you ain't going to do shit to me." (*Id.* at 18:4-5.) As Plaintiff began to walk into his cell, Officer Winters "pushed [him] very

4

aggressively like he was actually trying to push me where I was thrown." (*Id.* at 18:10-13.) The shove caused Plaintiff to be thrown off balance. (*Id.* at 18:18-20.) Plaintiff stated that he was pushed from the front of the cell to the back of the cell and grabbed the bed in his cell to stop himself from hitting his face on the wall. (*Id.* at 19:13-18.) Immediately after the shove, Sgt. McClelland ran in the cell and stepped between Plaintiff and Officer Winters. (*Id.* at 19:6:11.) Plaintiff did not experience any physical injuries as a result of the shove, nor did he seek medical treatment. (*Id.* at 25:7-12; 29:3-30:1.)

Following the altercation, Sgt. McClelland handcuffed Plaintiff and took him to segregation, where he remained from May 2, 2012 to August 3, 2012, a period of 93 days. (*Id.* at 25:17-19.) Plaintiff contends that Officer Winters wrote a false disciplinary report against him, and that Sgt. McClelland supported Officer Winters' version of events. (*Id.* at 45:16-23.) On May 7, Officer Jackson issued Plaintiff a disciplinary ticket for a number of offenses, including possession of contraband (the banana), intimidation, threats, assault, disobeying a direct order, and insolence. (Defs.' Stmt. at ¶ 12.) Plaintiff told Officer Jackson that he wanted to have witnesses at his hearing, and gave her a list of prisoners he wanted to testify. (*Id.*; *see also* Pl.'s Dep. at 31:21-32:19.) Officer Jackson told Plaintiff that she would investigate, but added that it did not make sense to "question 30 guys about the same thing." (Pl.'s Stmt. at ¶ 19; Pl.'s Dep. at 32:11-19.)

Plaintiff's hearing was held on May 8, 2012, and was presided over by Lt. Bishop and an unknown officer. (Defs.' Stmt. at ¶ 13.) Plaintiff denied the charges, and stated that he had never threatened or touched Officers Winters. (Pl.'s Stmt. at ¶ 20; Pl.'s Dep. at 33:19-23.) Plaintiff also attempted to give Lt. Bishop five affidavits from witnesses, but she refused to accept them. (Pl.'s Stmt. at ¶ 21; Pl.'s Dep. at 34:2:10.)

After the hearing, Plaintiff was found guilty of assault, disobeying a direct order, and insolence. (Defs' Stmt. at ¶ 14.) Plaintiff was sentenced to three months of segregated confinement, three months' reduction from "A" grade to "C" grade, three months' commissary restriction, and six months contact visit restriction. (*Id.*) Plaintiff filed a grievance protesting the procedure at his disciplinary hearing. (*Id.* at ¶ 16.) The Administrative Review Board recommended that the disciplinary report be expunged for non-compliance with Department of Corrections Rule 504.30, which outlines proper procedures for the preparation disciplinary reports, and Department of Corrections Rule 504.80, which outlines the process to which prisoners are entitled during a disciplinary proceeding, including the procedures as to witnesses. (Defs.' St. at ¶ 16; *see* Pl.'s Am. Compl., Dkt. No. 38, at pg. 14.)

While in disciplinary segregation, Plaintiff was housed in F-House and had a cellmate. (Pl.'s Dep. at 25:20-26:7.) Plaintiff describes the conditions in segregation as "filthy, roach and rodent infested." (*Id.* at 42:21-22.) There was an electric box with wires sticking out, but Plaintiff did not touch it, nor did he receive any injuries from it. (*Id.* at 43:3-8.) The toilet and the sink were dirty. (*Id.* at 43:9-10.) The toilet was on a timer, and flushed every 10 to 15 minutes. (*Id.* at 43:16-44:4.) Plaintiff did not experience any injuries due to the state of the sink and the toilet, although he described it as an inconvenience. (*Id.* at 43:9-12.) He had running water in his cell. (*Id.* at 43:13-14.)

In regard to the pest infestation, Plaintiff did not receive any injuries as a result of the rats and roaches in his cell, but described it as a "major inconvenience suffering with roaches in the bed, roaches in my food." (*Id.* at 44:5-8.) Plaintiff testified in his deposition that he did not seek medical treatment for any injuries as a result of the cell conditions. (*Id.* at 44:11-17.) In his response to the motion for summary judgment, however, Plaintiff states that he did seek medical

treatment "as a result of his stay in disciplinary segregation." (Pl.'s Stmt. at ¶ 30.)

Plaintiff contends that he requested medical treatment beginning on May 25, 2012 (while he was in segregation) due to stomach pains. (*See* Pl.'s July 2, 2012, grievance, Dkt. No. 84, pg. 82-83.) Medical records submitted by Plaintiff indicate that the Health Care Unit at Stateville received a letter from Plaintiff on June 7, 2012, in which he complained of "various issues." (*See* Offender Outpatient Progress Notes, Dkt. No. 84, pg. 73.) The medical records indicate that Plaintiff was a "no-show" for an appointment on June 29, 2012, but Plaintiff contends the missed appointment was due to his sick call pass having the incorrect time on it. (*See id.*, Pl.'s Decl., Dkt. No. 84, pg. 19, ¶ 16.) Plaintiff also apparently had a June 15, 2012, appointment that was cancelled due a lockdown at the prison. (*See* Offender Outpatient Progress Notes, Dkt. No. 84, pg. 73.)

Plaintiff contends that he was not treated for these stomach issues until November 15, 2012, following his release from segregation. (Pl.'s Decl., ¶¶ 17-18.) However, Plaintiff has not provided any evidence linking his stomach condition to the conditions in segregation. Rather, it appears that was eventually diagnosed with hyperthyroidism. (Pl.'s Dep. at 44:14-17.) He does not know what caused him to develop the condition. (*Id.* at 44:18-21.)[1]

---

[1] Defendants contend that the Court should not consider Plaintiff's medical records because they are unauthenticated and were obtained following the close of discovery. However, the records are accompanied by a memorandum from the medical records director at Wexford Health Sources indicating that Plaintiff requested the records. Given Plaintiff's *pro se* status, his apparent confusion regarding the discovery deadline (*see* Dkt. Nos. 80-81), and the fact that there is no suggestion that the records are not in fact authentic, the Court is inclined to consider the records. The larger issue, as discussed herein, is that the records do not support Plaintiff's claim that he suffered injuries caused by his term in segregation. To the extent that Plaintiff is attempting to raise a claim that any prison officials were deliberately indifferent to his serious medical needs, Defendants are correct that such a claim was not included in Plaintiff's complaint, and new claims cannot be introduced at the summary judgment stage. *See Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997).

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the Court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255.

The parties seeking summary judgment have the initial burden of showing that there is no genuine dispute and that they entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010). If the moving parties demonstrate the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing there is a genuine issue for trial." *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012).

## ANALYSIS

### A. Excessive Force

As to Plaintiff's excessive force claim, the intentional use of excessive force by prison guards against an inmate without penological justification can constitute cruel and unusual punishment in violation of the Eighth Amendment. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010);

*DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). The "'core judicial inquiry'" is not the degree of injury sustained, but rather "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Several factors are relevant to this determination, including the need for force, the amount applied, the threat a guard reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson*, 503 U.S. at 7; *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004).

However, the absence of serious injury is relevant to Eighth Amendment inquiry. *Wilkins*, 559 U.S. at 37. Relevant to the instant case, "'[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" *Id.* at 37-38 (quoting *Hudson*, 503 U.S. at 9-10); *see Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973), *overruled on other grounds*, *Graham v. O'Connor*, 490 U.S. 386 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

In allowing this claim to proceed past the pleading stage, *see* Opinion and Order, Dkt. No. 53 at pg. 4, this Court noted the Supreme Court's admonition that "injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins*, 559 U.S. at 38. Although it is undisputed that Plaintiff suffered no injuries, Plaintiff described the shove as "very aggressive[] like he was actually trying to push me down where I was thrown." (Pl.'s Dep. at 18:10-13.) Plaintiff further testified that Officer Winters pushed him from the front to the back of his cell, and that he had to grab the bed to prevent himself from hitting his face on the wall.

9

(Pl.'s Dep. at 19:13-18.) Defendant Winters offers no justification for this use of force, as the only evidence in the record is Plaintiff's version of events. Rather, he argues that this single, isolated shove that resulted in no injuries was a *de minimis* use of force. While that is one plausible interpretation of the evidence, the Court cannot find as a matter of law that a shove that allegedly threw Plaintiff from the front to the back of his cell – an unknown distance – was *de minimis*. *See Davis v. Phillips*, No. 09-CV-3336, 2012 WL 912857, at *6 (C.D. Ill. March 16, 2012) (denying motion for summary judgment where record was insufficient to judge the amount of force used by an officer who rushed toward him and "contacted" him under the chin). Although Plaintiff was not injured, he may still be entitled to nominal damages. Therefore, Defendants' motion for summary judgment is denied in regard to the excessive force claim against Officer Winters.

## B. Violation of Right to Procedural Due Process

Plaintiff alleges that his right to procedural due process was violated by the manner in which the disciplinary charges against him were adjudicated. A prisoner challenging the process he was afforded in a prison disciplinary proceeding must show that: (1) he has a liberty or property interest with which the state has interfered; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (internal citations omitted).

Here, Plaintiff has brought forth sufficient evidence that the procedures he was afforded during the disciplinary hearing were deficient. It is well-established that an inmate who is subjected to prison disciplinary proceedings is entitled to present relevant evidence, including witness testimony, unless it is cumulative or unduly threatens the security of the facility. *Ellison v. Zatecky*, --- F.3d ---, 2016 WL 1567039, at *2 (7th Cir. Apr. 19, 2016) (internal citations

10

omitted). Here, Defendants do not present any evidence to counter Plaintiff's allegations that he was improperly prohibited from presenting witness testimony or affidavits, and the Administrative Review Board's recommendation that his disciplinary report be expunged suggests that proper procedures were not followed during the hearing. The key question, then, is whether Plaintiff had a liberty interest with which the state interfered.

In and of themselves, Plaintiff did not have a liberty or property interest in regard to the three months' reduction from "A" grade to "C" grade, three months' commissary restriction, and six months' contact visit restriction. *See Smith v. Birkey*, 447 Fed. App'x 744, 746 (7th Cir. 2011) (reduction to C-grade status does not implicate a liberty interest); *Shelby v. Gelios*, 287 Fed. App'x 526, 528 (7th Cir. 2008) (inmates are not entitled to due process before they lose visitation privileges).

The key question is whether Plaintiff had a liberty interest in avoiding the 93 days he spent in disciplinary segregation in the F-House. An inmate's liberty interest in avoiding segregation is limited. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). Whether a prisoner has a liberty interest in avoiding segregation depends on whether the confinement posed an "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In assessing whether a term of confinement to segregation gives rise to a liberty interest, the Seventh Circuit considers "'the combined import of the duration of the segregative confinement *and* the conditions endured.'" *Id.* (emphasis in the original) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). Further, a relatively short period of segregation may, depending on the conditions of confinement and any additional punishments, establish a due process due process violation. *Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015) (collecting cases where terms of between

11

75 and 90 days in segregation were found to possibly amount to an atypical and significant deprivation).

In determining whether the hardships imposed are "atypical and significant," the correct comparison is between the "'ordinary conditions of a high-security prison in the state, and the conditions under which the prisoner is actually held.'" *Kervin*, 787 F.3d at 836 (quoting *Marion v. Radtke*, 641 F.3d 874, 876 (7th Cir. 2011)). In evaluating whether a term of segregated confinement is atypical, the Court must consider all of the circumstances of the prisoner's confinement. *Id.* (citing *Columbia Corr. Inst.*, 559 F.3d at 699).

The problem in this case is that Defendants offer no evidence as to how Plaintiff's term of segregated confinement differed from a stint in general population. Plaintiff does not proffer much in this regard, either. Plaintiff puts forth monitoring reports from the John Howard Association, which suggest that pest infestation and lack of adequate sanitation are concerns at Stateville, and in particular (and perhaps to a greater degree) in the F-House. (*See* Dkt. No. 84, pgs. 85-131.) However, these monitoring reports refer to conditions at Stateville generally, and not conditions particular to Plaintiff's cell at the relevant time alleged in the complaint. Further, the reports consist of inadmissible hearsay. *See Gray v. Hardy*, No. 11 C 7097, 2013 WL 5433280, at *5 n.6 (N.D. Ill. Sept. 30, 2013) (finding monitoring reports from John Howard Association insufficient to sustain Plaintiff's conditions of confinement claim); *see also Waldrop v. Wexford Health Sources, Inc.*, No. 12 C 6031, 2015 WL 3537854, at *8 (N.D. Ill. June 3, 2015) ("Merely pointing to the existence of problems at the same facility as a *general* matter, as noted in other cases, is hardly an adequate means for a plaintiff to satisfy the burden at the summary judgment stage regarding *his* own particular claims.") (emphasis in original). Additionally, to the extent Plaintiff contends that he sought medical attention *as a result* of his

stay in segregation, the medical records Plaintiff has submitted do not support that proposition, and it is directly contradicted by his deposition testimony indicating that he did not seek medical treatment for any injuries he received as a result of his stay in segregated confinement. (*See* Pl.'s Dep. at 44:11-14.) The Court further observes that Plaintiff had a cellmate during his stay in segregation, mitigating concerns about the denial of human contact. *See Kervin*, 787 F.3d at 837.

Nonetheless, Plaintiff has brought forth evidence that he spent 93 days in a segregation cell that was filthy and vermin infested, and that he did not receive cleaning supplies. He describes roaches in his bed and food. The fact that Plaintiff's toilet operated on a timer, although unpleasant, does not amount to an unconstitutional condition of confinement. *See Barbosa v. McCann*, No. 08 C 5012, 2011 WL 4062469, at *5 (N.D. Ill. Sept. 12, 2011) (collecting cases). However, the combined conditions of Plaintiff's confinement, including a filthy toilet and sink and a vermin infestation, without any cleaning supplies to combat these conditions, suggests that Plaintiff may have been subjected to an atypical and significant hardship. *See Welch v. Bartlett*, 196 F.3d 389, 393-94 (2nd Cir. 1999) (reversing grant of summary judgment where plaintiff alleged that hygienic conditions were far inferior in segregation, and "[t]he record d[id] not reveal whether it is typical for inmates not being disciplined to spend similar periods of time in similar circumstances."). Because this Court does not have the evidence before it from which it can engage in a *Sandin* analysis, Defendants' motion for summary judgment is denied. *See Ollie v. Hodge*, No. 3:13-CV-1181-NJR-DGW, 2015 WL 8481679, at *6 (S.D. Ill. December 10, 2015) (observing that Court could not determine whether summary judgment was appropriate on *Sandin* grounds where the parties did not address the impact of plaintiff's alleged weight loss and health problems while in segregated confinement).

## **CONCLUSION**

For the reasons stated in this opinion, Defendant's motion for summary judgment [69] is denied. The Court in its discretion recruits counsel to represent Plaintiff. Wallace Cyril Solberg, Anderson + Wanca, 3701 Algonquin Road, Suite 500, Rolling Meadows, IL 60008, wsolberg@andersonwanca.com, is recruited to represent Plaintiff in accordance with counsel's trial bar obligations under the District Court's Local Rules 83.11(g) and 83.37.

ENTER: *Charles Norgle*
Charles R. Norgle
United States District Court Judge

DATE: 5-5-16